**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff/Respondent,**

**v.**                            **No. 14-cv-0304 RB/SMV**
                                           **09-cr-0760 RB**

**FRANK L. GUTIERREZ,**

      **Defendant/Petitioner.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendant/Petitioner (hereinafter "Petitioner") Frank L. Gutierrez's Motion under 28 U.S.C. § 2255 . . . [CV Doc. 1, CR Doc. 138][1] filed on March 31, 2014. Petitioner supplemented his Motion on April 14, 2014. [CV Doc. 7, CR Doc. 142]. Plaintiff/Respondent (hereinafter "the Government") filed a response [CV Doc. 12, CR Doc. 150] on July 31, 2014. Plaintiff filed no reply. The Honorable Robert C. Brack, United States District Judge, referred this matter to me for proposed findings and a recommended disposition on April 8, 2014. [CV Doc. 3]. Having reviewed the parties' submissions, the relevant law, the records in this case and Petitioner's underlying criminal case, and being otherwise fully advised in the premises, I recommend that this motion be DENIED and that Case No. 14-cv-0304 RB/SMV be DISMISSED with prejudice.

---

[1] References that begin with "CV" are to case number 14-cv-0304 RB/SMV. References that begin with "CR" are to the underlying criminal case, 09-cr-0760 RB.

## FACTUAL BACKGROUND

Just after 3:00 a.m. on November 12, 2008, Sgt. Arthur De La Garza, an officer of the Lordsburg Police Department, observed Petitioner's vehicle, traveling eastbound on Interstate 10 between Lordsburg and Deming in New Mexico, cross the right shoulder line twice. [CR Doc. 77] at 4.  Sgt. De La Garza initiated a traffic stop on the vehicle.  *Id.*

Sgt. De La Garza asked Petitioner for his license, insurance, and registration.  *Id.*  As Petitioner complied, Sgt. De La Garza noticed that his hands were shaking and that he appeard "abnormally nervous" and agitated.  *Id.* at 5.  Sgt. De La Garza also noticed that Petitioner's passenger, Brisa Martinez, appeared lethargic and had "droopy" eyes.  *Id.*  Sgt. De La Garza suspected Ms. Martinez to be under the influence of narcotics.  *Id.*

Sgt. De La Garza asked Petitioner to accompany him to his police cruiser.  *Id.*  There, Petitioner explained that he had driven west to Tucson, Arizona, to see a friend and had passed through Lordsburg just a few hours prior.  *Id.*  Sgt. De La Garza then returned to Petitioner's vehicle and questioned Ms. Martinez about the trip to Tucson.  *Id.* at 6.  Ms. Martinez gave information inconsistent with Petitioner's statements.  *Id.*  Sgt. De La Garza also thought that Ms. Martinez continued to appear lethargic, seemed evasive, and "was trying to hide something." *Id.*

Sgt. De La Garza returned to his vehicle and contacted dispatch to check on the validity of Petitioner's license and to inquire about the availability of a Border Patrol canine unit.  *Id.* at 6–7.  Sgt. De La Garza wished to conduct a dog sniff using a canine unit, but he was told that a canine unit would not be available for up to two hours.  *Id.* at 7.  At 3:14 a.m., dispatch stated that Petitioner's license was valid.  *Id.*

At 3:21 a.m., Sgt. De La Garza issued Petitioner a warning citation and then told him he was "good to go." *Id.* at 6–7.  As Petitioner was turning to leave, Sgt. De La Garza said, "If you don't mind, I have a couple questions I have to ask you." *Id.* at 7.  He explained that he was suspicious about what transpired during the stop and asked for permission to search the vehicle. *Id.*  Petitioner responded, "You can search it; you can bring the dog if you want to." *Id.* at 7–8. Based on that statement, Sgt. De La Garza believed Petitioner had consented to his search of the vehicle. *Id.*  Later, Petitioner told Sgt. De La Garza that he would only allow a police dog to sniff the vehicle. *Id.*  Sgt. De La Garza suspected Petitioner had narrowed the scope of his consent upon overhearing a radio dispatch that no canines were immediately available. *Id.*

Sgt. De La Garza then contacted his brother, Agent Luke De La Garza of the Border Operations Task Force, and asked whether he had any information on Petitioner or Ms. Martinez. *Id.* at 9.  Agent Luke De La Garza returned his brother's call at 3:42 a.m. and said that Petitioner was "moving drugs" in the Deming area, and, thus, his car should be seized. *Id.*

Sgt. De La Garza informed Petitioner that he was free to go, but that his vehicle was being seized. *Id.* at 10.  A tow truck took the vehicle to the Lordsburg Police Department. *Id.* Police officers took Petitioner and Ms. Martinez to a nearby truck stop approximately 60 miles from Petitioner's home in Deming. *Id.*

Agent Luke De La Garza and Sgt. De La Garza obtained a search warrant for Petitioner's vehicle at 8:30 a.m. the same day. *Id.* at 11.  They executed the warrant and found 70.96 grams of methamphetamine in the vehicle. *Id.*

## PROCEDURAL BACKGROUND

On November 25, 2008, a criminal complaint was filed against Petitioner, charging him with possession with intent to distribute 3.0 ounces of methamphetamine, in violation of 21 U.S.C. § 841.  [MJ Doc. 1].[2]  Petitioner retained Billy R. Blackburn as his attorney in January, 2009.  Notice of Appearance, [MJ Doc. 30].  The United States offered Petitioner a plea agreement on March 3, 2009.  [CV Doc. 12-3] at 4–10.  Petitioner did not accept the plea agreement.  On March 18, 2009, the Honorable Carmen E. Garza, United States Magistrate Judge, dismissed the criminal complaint without prejudice due to a violation of the time limit set forth in 18 U.S.C. § 3161(b).  [MJ Doc. 46].

Shortly thereafter, on March 26, 2009, Petitioner was indicted on a single count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  [CR Doc. 2].

Petitioner filed two motions to suppress the physical evidence seized from his vehicle.  In his First Motion to Suppress [CR Doc. 15], Petitioner argued that the seizure exceeded the scope and length of what was justified by the initial traffic stop, and that his continued detention was not supported by reasonable suspicion or voluntary consent.   [CR Doc. 15] at 14, *see* [CR Doc. 77] at 2.  Petitioner's Second Motion to Suppress [CR Doc. 19] asked the Court to suppress any evidence obtained from his vehicle pursuant to the search because the warrant was invalid, or in the alternative, that the Court review the affidavit in support of the search warrant at a *Franks* hearing.  [CR Doc. 19] at 1, *see* [CR Doc. 77] at 2.  Neither motion to suppress challenged the validity of the initial traffic stop.

---

[2] References to "MJ __" are to the criminal complaint filed on November 25, 2008, case number 08-mj-0765 CG.

The Honorable Michael J. Reagan, United States District Judge, conducted a suppression hearing on the motions on February 9, 2010, and March 26, 2010. *See* Transcript of February 9, 2010 Suppression Hearing (Vol. I of II) [CR Doc. 119]; Transcript of March 26, 2010 Suppression Hearing (Vol. II of II) [CR Doc. 123]. Initially, the hearing was scheduled for only Tuesday, February 9, 2010. [CR Doc. 77] at 2. But at the end of the day, Judge Reagan continued the hearing until Friday, February 12, 2010. *Id.* Petitioner's counsel took ill and was unable to attend the hearing on February 12, or any other dates in February on which the court attempted to continue the hearing. *Id.* Petitioner was given the option of retaining new counsel at this point, but he declined:

> [Petitioner] waived his right to a speedy trial and indicated that he wished to continue with his counsel of choice, even though this would delay his trial setting. The Court found that forcing [Petitioner] to continue without his counsel of choice or forcing [trial counsel] to continue with the motion hearing in his compromised medical state would have been impossible or would result in a miscarriage of justice.

*Id.* at 2–3. The suppression hearing was ultimately continued telephonically on March 26, 2010. *Id.* at 3.

Judge Reagan denied both motions to suppress in an order issued April 12, 2010. [CR Doc. 77]. He identified three distinct instances in which the Government potentially could have violated Petitioner's Fourth Amendment rights: "(1) the investigative detention after the initial traffic stop, (2) the seizure of Defendant's vehicle, and (3) the search of the vehicle." *Id.* at 28–29. He held that the Government did not violate Petitioner's rights in any of these instances. *Id.* at 29.

Petitioner's case proceeded to a jury trial before the Honorable Robert C. Brack, United States District Judge.  The jury found Petitioner guilty of possession with intent to distribute 50 grams or more of methamphetamine, as charged in the indictment.   Jury Verdict, [CR Doc. 94].

The United States Probation Office calculated a sentencing guideline range of 135 to 168 months' imprisonment.  [CV Doc. 12] at 3.  However, a statutory enhancement pursuant to 21 U.S.C. §851 resulted in a mandatory minimum sentence of 20 years' imprisonment.[3]  *Id.* Petitioner received the mandatory minimum sentence—20 years' imprisonment—on June 14, 2011.  [CR Docs. 103, 104].

Petitioner timely appealed the order denying his motions to suppress.  On appeal, he argued only that "the warrant-based search of his vehicle violated his Fourth Amendment right against unreasonable search and seizure."  *United States v. Gutierrez*, 498 F. App'x 786, 790 (10th Cir. 2012).  He did not challenge the legality of the initial stop, Sgt. De La Garza's continued questioning after the stop, or whether probable cause existed to seize his vehicle.  *Id.* On October 5, 2012, the Tenth Circuit affirmed Judge Reagan's denial of the motions to suppress.  *Id.* at 793.

On March 15, 2013, the Supreme Court denied Petitioner's subsequent petition for writ of certiorari.  [CR Doc. 136].

Petitioner now brings the present motion pursuant to 28 U.S.C. § 2255.  *See* [CV Doc. 1].

---

[3] Petitioner was subject to a statutory enhancement under 28 U.S.C. § 851 due to a prior federal felony conviction for trafficking narcotics.  [CV Doc. 12-6] at 2.

## ANALYSIS

Petitioner offers two grounds in support of his motion.  Ground One asserts three claims for ineffective assistance of trial counsel.  First, Petitioner claims that trial counsel was constitutionally ineffective for failing to challenge the vehicle stop in either motion to suppress. Second, he claims that trial counsel was ineffective for failing to inform him of the plea agreement offered by the Government.[4]  And third, he claims that trial counsel was an ill man who should not have taken Petitioner's criminal case, and that counsel entrusted the case to his inexperienced associate.  In Ground Two, Petitioner claims that appellate counsel was ineffective for omitting two important Fourth Amendment issues on appeal.[5]  The Government contends that all claims are meritless.[6]

---

[4] Ground One contains three subparts, subparts (b), (c), and (d), relating to the plea agreement.  Petitioner contends that his trial counsel was ineffective in that "(b) he did not timely inform [Petitioner] of the first proffered plea agreement, (c) he did not adequately discuss any plea agreement with [Petitioner]," [and] "(d) he never recommended that [Petitioner] should take a plea offer or plead guilty, or make a conditional plea of guilty."  [CV Doc. 1-1] at 1.  The subparts are essentially a single claim for ineffective assistance of counsel for failure to inform and advise on the plea agreement, and so this PF&RD will address them as one claim.

[5] In Ground Two, Petitioner claims that either (a) appellate counsel was ineffective in failing to raise two Fourth Amendment issues, or (b) "trial counsel was ineffective for not preserving the issues for appeal."  [Doc. 1-1] at 2; *see* [Doc. 1] at 6.  The record indicates that trial counsel did preserve the two Fourth Amendment issues.  Trial counsel argued the issues in motions to suppress and at the suppression hearings.  *See* First Motion to Suppress [CR Doc. 15]; Second Motion to Suppress [CR Doc. 19]; *see also* [CR Doc. 77] at 2, 28–29.  Accordingly, the Court will examine Ground Two only as relating to appellate counsel.

[6] The Government also argues that Petitioner's claims are procedurally defaulted.  [CV Doc. 12] at 11–14, 28–29. Procedural default, however, is not jurisdictional.  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Accordingly, a court need not address procedural default defenses where a habeas petitioner otherwise loses on the merits.  *Revilla v. Gibson*, 283 F.3d 1203, 1211 (10th Cir. 2002).  I decline to address the procedural default arguments here and instead will make recommendations based on the merits of Petitioner's claims.

# I.    Ground One: Claims for Ineffective Assistance of Trial Counsel

## A.    The Standard

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding].

466 U.S. at 687. Both showings must be made to satisfy the *Strickland* standard. *Id.* The Court need not address both prongs of the standard if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. In applying the two-part *Strickland* test, a court may address the performance and prejudice components in any order. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

Under the first prong, a defendant must demonstrate that his counsel's performance was deficient. The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland* 466 U.S. at 687–88. For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d

1447, 1459 (10th Cir. 1995)).  In evaluating an attorney's performance, the Court must be highly

deferential:

> A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a
> court must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action might be considered
> sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

In applying this test, the Court must give considerable deference to an attorney's strategic

decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment."  *Id.*

at 690.  "Neither hindsight nor success is the measure" of whether counsel was effective, and

"effective" is not synonymous with victorious or flawless.  *Dever v. Kan. State Penitentiary*, 36

F. 3d. 1531, 1537 (10th Cir. 1994).  Rather, to be considered *ineffective* assistance of counsel,

"the representation must have been such as to make the [proceeding] a mockery, sham, or farce,

or resulted in the deprivation of constitutional rights." *Id.* (citing *Lorraine v. United States*, 444

F.2d 1, 2 (10th Cir. 1971)).

A defendant asserting ineffective assistance of counsel must also affirmatively prove

prejudice.  *Strickland*, 466 U.S. at 693.  "The defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.  A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Id.* at 694.

**B.     Ineffective Assistance of Counsel for Failure to Challenge the Legality of the Vehicle Stop in Either Motion to Suppress**

Petitioner contends that his trial counsel was ineffective in failing to challenge the legality of the vehicle stop in either motion to suppress.  *See* [CV Doc. 1] at 5; [CV Doc. 1-1] at 1; [CV Doc. 7] at 1–3.  He argues that Sgt. De La Garza lacked reasonable suspicion to conduct the traffic stop in the first place, and thus the traffic stop was illegal under Tenth Circuit law.  [CV Doc. 1] at 5; [CV Doc. 7] at 1–2.  Drifting onto the shoulder line twice, he argues, does not constitute reasonable suspicion of either a traffic infraction or intoxication. [CV Doc. 7] at 2.  Petitioner claims that his trial counsel was ineffective in failing to include this important Fourth Amendment issue in either motion to suppress.  *Id.* at 2–3.

The Government disagrees, contending that counsel was not ineffective because Petitioner's argument concerning the traffic stop is meritless.  [CV Doc. 12] at 14–18.  The Government argues that "it was reasonable for Sergeant De La Garza to conclude that a violation of N.M. Stat. § 66-7-317 and/or a statute prohibiting the operation of a motor vehicle while impaired had occurred or was occurring."  *Id.* at 14.  And because the stop was valid at its inception, counsel was not ineffective in failing to argue its illegality.

Petitioner's claim is meritless.  First, Petitioner has not established that his trial counsel's performance was deficient.  An attorney's choice in advancing one theory over another at a suppression hearing is often a strategic decision.  *See United States v. Prows*, 280 F. App'x 740, 742 (10th Cir. 2008) ("[A]ttorneys have wide latitude in making tactical decisions.") (citing *Strickland*, 466 U.S. at 689).  An attorney is not constitutionally required to make specific arguments—or even the best argument—at a suppression hearing.  *United States v. Davis*, 406 F. App'x 268, 270–71 (10th Cir. 2010) (rejecting the petitioner's argument that his trial counsel

was ineffective "for failing to raise the 'best' arguments at the suppression hearing"); *Prows*, 280 F. App'x at 742 (explaining that an attorney's decision "not to make the exact arguments that [the habeas petitioner] desired, standing alone, [does] not demonstrate that the attorney's decisions were so completely unreasonable as to constitute ineffective assistance").   Here, Petitioner's trial counsel advanced various arguments for the suppression of evidence seized from the vehicle in the motions to suppress and at the hearings.  *See generally* [CR Docs. 15, 19, 119, and 123].   Counsel's decision to advance certain arguments over others was a strategic decision.   He was not constitutionally required to advance the particular argument Petitioner discusses here.

Even assuming *arguendo* that counsel's actions were completely unreasonable—which I do not find—Petitioner has not shown prejudice as a result of counsel's alleged deficiency. Petitioner relies on *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), to show that the initial stop was invalid.   In *Gregory*, the Tenth Circuit found that a single instance of drifting onto the shoulder of the road did not give rise to reasonable suspicion of a Utah traffic violation. *Gregory*, 79 F.3d at 978.   However, *Gregory* is limited in scope.   It "does not stand for the proposition that a single instance of drifting onto the shoulder can never be a violation of a traffic statute."  *United States v. Valenzuela*, 494 F.3d 886, 889 (10th Cir. 2007) (internal quotation marks omitted).   Rather, courts must examine whether an officer had reasonable suspicion of a violation (traffic or otherwise) based on the totality of circumstances.  *Id.*   And based on the totality of circumstances here—the vehicle's sudden movements with no apparent reason (such as poor weather conditions)—Sgt. De La Garza had reasonable suspicion of a traffic violation or intoxication.

Moreover, the order denying Petitioner's motions to suppress twice affirms the validity of the traffic stop. First, it notes that "Defendant does not contest the legality of the initial traffic stop, and from the facts available to the Court[,] Sgt. De La Garza was justified in conducting the stop." [CR Doc. 77] at 11. It further states that "there were clearly no Fourth Amendment violations" up until 3:21 a.m., when Petitioner received the warning citation. *Id.* at 12. Given these statements, it seems highly unlikely that Judge Reagan would have found Petitioner's argument meritorious. Thus, Petitioner fails to show a reasonable probability that, but for his counsel's alleged errors, the result of the proceeding would have been different. I find, therefore, that Petitioner has failed to show ineffective assistance of counsel under *Strickland*.

### C.    Ineffective Assistance of Trial Counsel for Failure to Inform and Advise on the Plea Agreement

Petitioner claims that his trial counsel was ineffective failing to "timely inform [Petitioner] of the first proffered plea agreement," failing to "adequately discuss *any* plea agreement with [Petitioner]," and failing to recommend that Petitioner should take a plea offer or plead guilty. [CV Doc. 1-1] at 1. Petitioner alleges the following:

> [T]he United States Attorney had made a plea offer on March 3, 2009, which was only open for 14 days, expiring on March 18, 2009. [Petitioner] was incarcarated [sic] in Las Cruces, New Mexico from March 4, 2009-March 17, 2009, and, during that time, trial counsel never mentioned the plea offer to him. [Petitioner]'s girlfriend drove [Petitioner] to Albuquerque, New Mexico right after he bonded out on the morning of March 18, 2009 (the 14th day), and they met with trial counsel. At that meeting, trial counsel did not mention a plea offer. [Petitioner] specifically asked trial counsel if "he had been offered a plea bargain yet?" Trial counsel's reply was, "Don't worry about it."

[CV Doc. 1] at 5, continued at [CV Doc. 1-1] at 1. Petitioner also states that his retained counsel had no knowledge of the plea agreement until the day before the plea was set to expire. [CV

Doc. 1-1] at 2.  Petitioner contends that his trial counsel's actions were constitutionally deficient under the standards set forth in *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012).  [CV Doc. 7] at 3–4.  Petitioner further contends that counsel's deficiencies prejudiced him, as he "would have pled guilty to avoid the 851 enhancement." [CV Doc. 1-1] at 2.

Defendants are entitled to effective assistance of competent counsel during the plea-bargaining process.  *Lafler*, 132 S. Ct. at 1384.  As with other ineffective assistance of counsel claims, the two-pronged *Strickland* test applies.  Counsel may be deficient by failing to communicate a favorable plea agreement to a defendant, *Frye*, 132 S. Ct. at 1408, or by advising a defendant to reject a plea offer on the grounds that he cannot be convicted at trial, *see Lafler*, 132 S. Ct. at 1384.  To establish prejudice in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice."  *Lafler*, 132 S. Ct. at 1384.

If truthful, Petitioner's allegations would be very disconcerting.  But the record reveals a different story.

First, counsel did, in fact, timely inform and advise Petitioner of the one plea agreement offered.[7]  Prior to Judge Garza's dismissal of the criminal complaint, *see* [MJ Doc. 46], the Government offered Petitioner a plea agreement, [CV Doc. 12-3] at 4–10.  Petitioner's trial counsel received the plea agreement in a written letter sent via email on March 3, 2009.  *Id.* at 1. The plea offer was to remain open for fourteen days.  *Id.*  Mr. Blackburn has submitted a sworn

---

[7] The Government states that there existed no other plea agreement to disclose.  [CV Doc. 12] at 20 n.9.  The Government extended no other plea agreement following the filing of the one-count indictment on March 26, 2009. *Id.*

affidavit confirming that he received the Government's email correspondence.  [CV Doc. 12-6] at 3.  He attests that he discussed the plea offer with Petitioner, pursuant to his "standard practice in every criminal case to provide each and every plea offer to [his] client . . . ."  *Id.*  Further, he avers that he had discussed the statutory enhancement with Petitioner in December, 2008, prior to becoming Petitioner's attorney or receiving the Government's plea agreement.[8]  *Id.* at 2.  According to Mr. Blackburn, Petitioner did not want to take the plea and rejected the plea agreement.  *Id.* at 5.  No other plea agreement was offered.  *Id.*; [CV Doc. 12] at 20 n.9.  Petitioner made no attempt to contest Mr. Blackburn's affidavit.

The record corroborates counsel's declaration that he received the plea agreement and informed Petitioner of it.  During a show cause and detention hearing before Judge Garza on March 4, 2009, counsel referenced the email correspondence containing the plea agreement (though not the plea agreement itself).  [CV Doc. 12-4] at 1.  Counsel again referenced the email correspondence at a status conference before Judge Garza on March 18, 2009, stating that he had received "a document that concerned some discovery and the first Plea Agreement."  [CV Doc. 12-5] at 3.  At no point in the proceedings did Petitioner inform the court that he had not seen the email correspondence or plea agreement referenced by counsel.

It appears that trial counsel received and was familiar with the plea agreement.  At a minimum, counsel informed Petitioner of the plea agreement and of the statutory enhancement in a timely fashion.  It is simply untrue that counsel did not know of the plea agreement until the day before it expired and failed to inform Petitioner of it.  Counsel never discussed other plea

---

[8] Mr. Blackburn avers that he met with Petitioner on December 12, 2008, prior to becoming Petitioner's retained counsel on January 28, 2009.  [CV Doc. 12-6] at 2.  He states that he told Petitioner during the meeting "that, due to his prior federal felony conviction for trafficking narcotics, he would be subject to a statutory enhancement."  *Id.* Further, Mr. Blackburn attests that he discussed Petitioner's possible defense with him, "including [his] belief that a successful defense would likely require suppression of the evidence."  *Id.*

agreements with Petitioner because the Government offered no other plea agreements.  *See* [CV Doc. 12] at 20 n.9.  I find, therefore, that counsel's performance was not constitutionally deficient.

Assuming *arguendo* that counsel's performance was deficient—which I do not find—Petitioner has not shown prejudice from his trial counsel's alleged errors.  Petitioner claims that had he known of the plea agreement, he would have accepted it in order to avoid the statutory enhancement.  [CV Doc. 1-1] at 2.  This is refuted by trial counsel's affidavit.  Counsel attests that "[t]hroughout the entirety of [his] representation, [Petitioner] was clear that he did not wish to enter any plea agreement being offered by the Government because, in his mind, if he was going to receive a significant sentence he would rather seek suppression and risk receiving a twenty-year mandatory minimum sentence."  [CV Doc. 12-6] at 5.  Moreover, Petitioner never asked counsel to conduct any plea discussions on his behalf.  *Id.* at 4.  Petitioner has failed to show that—absent counsel's deficiencies—the outcome of the plea process would have been different.  *See Lafler*, 132 S. Ct. at 1384.

I find that Petitioner has established neither deficient performance nor prejudice and thus has failed to show ineffective assistance of counsel under *Strickland*.

### D.  Ineffective Assistance of Trial Counsel because Counsel was Ill and Should Not have Taken the Case, and Counsel Entrusted the Case to an Inexperienced Attorney

In his final claim for ineffective assistance of trial counsel, Petitioner essentially argues that counsel was ineffective for two reasons.[9]  First, he argues that trial counsel was an ill man

---

[9] Within this claim for ineffective assistance of counsel, Petitioner also states that trial counsel "showed an almost complete lack of knowledge about [Petitioner's] case and lack of interest."  This argument lacks any supportive evidence.  To the extent that it could be construed as a third point, I reject it as conclusory and find it to be without merit.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("Conclusory allegations without supporting

and should not have taken Petitioner's criminal case. He claims that trial counsel was "very ill" and hospitalized, which resulted in an extended break in the suppression hearing. [Doc. 1-1] at 2. Second, Petitioner argues that trial counsel entrusted the case to his "inexperienced" associate Paul.[10] *Id.* Paul knew of the plea agreement, Petitioner claims, but did not inform trial counsel of it. *Id.*

Again, Petitioner's claims ring hollow. Although trial counsel was ill for a short time in 2010,[11] nothing indicates that he was too ill to handle the case or that Petitioner did not want him to handle the case. Judge Reagan held a suppression hearing on February 9, 2010. [CR Doc. 77] at 2. At the end of the day, Judge Reagan set the hearing to continue on February 12, 2010. *Id.* Trial counsel was ill—though not hospitalized—and unable to appear on that date. *Id.* He was also ill and unable to appear on February 16, 19, or 24. At a status conference on February 16, 2010, counsel's associate, Paul Linnenburger, stated that he discussed the situation with Petitioner, and Petitioner did not want to retain new counsel. [CR Doc. 120] at 6. Judge Reagan questioned Petitioner and confirmed that he wished to stay with Mr. Blackburn, even though that might delay his case. *Id.* Petitioner voluntarily waived his right to a speedy trial and chose to continue with the counsel of his choice. [CR Doc. 47] (moving to vacate suppression hearing and trial setting); [CR Doc. 47-2] (waiving right to a speedy trial); *see* [CR Doc. 54] (moving to vacate trial setting). Ultimately, the suppression hearing was completed telephonically. *See*

---

factual averments are insufficient to state a claim on which relief can be based."); *cf. United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting allegations that were "merely conclusory in nature and without supporting factual averments").

[10] "Paul" refers to attorney Paul Linnenburger.

[11] Petitioner claims that trial counsel was "very ill" in 2009, "which explains the why there was a six week break in the Motion to Suppress hearing." [Doc. 1-1] at 2. However, the record reflects that trial counsel took ill—and thus could not appear for the suppression hearing for some time—in 2010.

[CR Doc. 123].  Petitioner consented to the telephonic hearing, acknowledged that his rights and options had been fully explained to him, and stated that he was "satisfied with [his] representation."  [CR Doc. 59].

Nothing in the record indicates that trial counsel was too ill to handle the case.  Indeed, Petitioner cites to no other instances of illness besides that in early 2010.  And counsel avers that he was not ill throughout the entire pre-trial and trial process, that he completely recovered by March 24, 2010, and that his representation was otherwise unaffected.  [CV Doc. 12-6] at 6. Petitioner states that his trial counsel's illness caused an extended break in the suppression hearing.  This is accurate, but it does nothing to advance Petitioner's ineffective assistance of counsel claim.  Rather than switch attorneys, Petitioner chose to waive his right to a speedy trial in order to stay with Mr. Blackburn.  *See* [CR Docs. 47, 47-2, and 54].

The record does not support Petitioner's claim that trial counsel entrusted the case to an inexperienced associate.  Counsel's associate, Paul Linnenburger, only appeared before the court to inform the Court of Mr. Blackburn's health and to state that he had discussed the matter with Petitioner.  *See* [CR Doc. 120].  The record does not support Petitioner's assertion that Mr. Linnenburger handled the entire case.

Plaintiff's allegations of his trial counsel's deficiencies are unsupported by the record. Petitioner has thus failed to show that his counsel's performance fell below an objective standard of reasonableness, as required to show ineffective assistance of counsel.  I find this claim to be meritless.

## II.   Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel[12] provided constitutionally ineffective assistance in failing to raise two critical Fourth Amendment issues on appeal: "(a) whether the Fourth Amendment was violated when Sgt. De La Garza continued the investigation and questioning long after the reason for the stop had dissipated, and (b) whether probable cause existed to seize [Petitioner's] vehicle to wait for the hoped for warrant." [Doc. 1-1] at 2-3. The Government contends that appellate counsel was not constitutionally ineffective because the omitted issues are meritless. [CV Doc. 12] at 30–32.

### A.   The Standard

"Ineffective assistance of appellate counsel claims are governed by the standards of *Strickland*." *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). That is, a petitioner must show both deficient performance and prejudice resulting from counsel's deficiencies to prevail.

Counsel's failure to raise a particular issue on appeal can, in some circumstances, constitute ineffective assistance of counsel. But "counsel need not (and should not) raise every nonfrivolous claim"; rather, counsel "may select from among them in order to maximize the likelihood of success on appeal." *Welch v. Workman*, 639 F.3d 980, 1012–13 (10th Cir. 2011) (internal quotation marks omitted). The success of such ineffective assistance of counsel claims rest on the merits of the omitted issue. *Id.* at 1013. If the omitted issue is meritless, "counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Hooks*, 184 F.3d at 1221; *see Smith v. Workman*, 550 F.3d 1258, 1268 (10th Cir. 2008). "If the omitted

---

[12] Mr. Blackburn represented Petitioner during the initial stages of his appeal. The Tenth Circuit granted Mr. Blackburn's motion to withdraw as counsel on July 18, 2011, and appointed the Federal Public Defender for the Districts of Colorado and Wyoming as counsel. [CR Doc. 113]. Assistant Federal Public Defender Jill M. Wichlens entered her appearance on behalf of defendant soon after. Accordingly, references to "appellate counsel" are to Ms. Wichlens.

issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).  And "if the omitted issue has merit but is not so compelling," the Court must assess the issue relative to the rest of the appeal and give "deferential consideration . . . to any professional judgment involved in its omission." *Id.*

**B.      Ineffective Assistance of Appellate Counsel in Failing to Contest the Investigative Detention after the Initial Stop**

Petitioner claims his appellate counsel was constitutionally ineffective in failing to contest Sgt. De La Garza's continued investigation and questioning long after the reason for the traffic stop had dissipated.  [Doc. 1-1] at 2-3.  Petitioner was pulled over just after 3:00 a.m. [CR Doc. 77] at 4.   At 3:21 a.m., Sgt. De La Garza issued the warning citation.   *Id.* at 7. Petitioner contends that the reason for the initial stop dissipated at that time, and the continued investigation, spanning from 3:21 a.m. to approximately 3:42 a.m., far exceeded the scope the initial traffic stop.[13]  [CV Doc. 1-1] at 3; [CV Doc. 7] at 4.   Petitioner argues that Sgt. De La Garza's actions violated *Terry v. Ohio*, 391 U.S. 1 (1968), because the continued detention lasted longer than the purpose of the brief stop.  [CV Doc. 7] at 4. He believes that Sgt. De La Garza prolonged the stop without reasonable suspicion to allow for a dog sniff, in violation of *Illinois v. Caballes*, 125 S. Ct. 834 (2005), and *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011). *Id.*  Moreover, he claims that the encounter was not consensual and that even if he gave consent at one point, he withdrew it prior to the search.   *Id.* at 4–5.   Had appellate counsel raised this

---

[13] Petitioner states that he received the citation at 3:15 a.m. and claims that the detention became unreasonable after that point.  [CV Doc. 1-1] at 3.   However, the record shows that the Petitioner received the citation at 3:21 a.m. [CR Doc. 77] at 12.

issue on direct appeal, Petitioner contends, "in all likelihood it would have resulted in the contraband being suppressed and an outright dismissal of [his] case." [CV Doc. 7] at 6.

This issue was litigated in Petitioner's criminal case. In his First Motion to Suppress, Petitioner argued that the seizure of his vehicle and person was unconstitutional because it exceeded the scope and length of what was justified by the initial traffic stop. [CR Doc. 15] at 14; *see* [CR Doc. 77] at 2. In denying the motion, Judge Reagan evaluated the investigative detention following the initial stop and found no Fourth Amendment violation. *See* [CR Doc. 77] at 13–18. Judge Reagan held that Petitioner voluntarily consented to Sgt. De La Garza's continued investigation. *See* [CR Doc. 77] at 13–16. After reviewing the video of the encounter and listening to witness testimony, Judge Reagan found "that Sgt. De La Garza's conduct was not so overbearing and authoritative that a reasonable person would have believed he was not free to end the encounter." *Id.* at 15 (citing *Sandoval*, 29 F.3d at 540). Rather, Petitioner and Sgt. De La Garza engaged in a "voluntary police-citizen encounter." [CR Doc. 77] at 16. Judge Reagan further held that even if Petitioner had not voluntarily consented, Sgt. De La Garza had reasonable suspicion to continue the investigative detention. *Id.* at 16–18. On direct appeal, Petitioner did not challenge the questioning following the vehicle stop; his appeal was limited to whether the warrant-based search of his vehicle violated the Fourth Amendment. *Gutierrez*, 498 F. App'x at 790.

As discussed above, the success of an ineffective assistance of counsel claim for failure to raise an issue on direct appeal rests on the merits of the omitted issue. If raised, the Tenth Circuit would have evaluated this issue under the standard of review for the denial of a motion to suppress. In reviewing the denial of a motion to suppress, the Court of Appeals views the

evidence in the light most favorable to the prevailing party and upholds the district court's factual findings unless clearly erroneous.  *United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012); *United States v. Rowland*, 145 F.3d 1194, 1200 (10th Cir.1998).  "Consideration of witness credibility, the weight given to evidence, and reasonable inferences drawn from evidence are within the district court's province as the fact-finder."  *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007), *decision clarified on denial of reh'g*, 499 F.3d 1162 (10th Cir. 2007).  Issues of law, including a district court's determination of reasonableness and the validity of consent, are reviewed de novo.  *United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009); *Andrus*, 483 F.3d at 716; *Rowland*, 145 F.3d at 1120.

For the omitted issue to have merit on appeal, Petitioner would need to show that neither voluntary consent nor reasonable suspicion existed to permit the continued investigation and questioning.  *See United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994) (allowing further detention and questioning if "(1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity or (2) the driver voluntarily consents to the officer's additional questioning" (internal quotation marks omitted)).  Issues of voluntary consent are reviewed de novo.[14]  Petitioner states that he did not give his consent, and if he did, the encounter became nonconsensual when he withdrew his consent.  [CV Doc. 7] at 5.

As a preliminary matter, Petitioner's arguments are conclusory.  He offers no supporting evidence to show that a reasonable person in the same situation would not have believed he was

---

[14] The Government contends that the issues are meritless under the "clear error" standard.  However, the "clear error" standard is only used for questions of fact.  The Tenth Circuit reviews matters of law—including the validity of consent—de novo.  *See Andrus*, 483 F.3d at 716.

free to end the encounter. *See Sandoval*, 29 F.3d at 540. Moreover, a de novo review would yield the same result as the motion to suppress. Sgt. De La Garza asked Petitioner if he could ask a few questions *after* returning Petitioner's license and registration. [CV Doc. 77] at 7. He prefaced his statement with "If you don't mind, . . . ." *Id.* He testified at the suppression hearing that he wished to move into a consensual encounter at that point. [CR Doc. 119] at 43. Petitioner told Sgt. De La Garza, "You can search [the vehicle]; you can bring the dog if you want to," [CV Doc. 77] at 7, though he later restricted the scope to a dog sniff, *id.* at 8. Based on the totality of the circumstances, a reasonable person would have believed he was free to end the encounter. Thus, the encounter following the initial stop was consensual, and a de novo review of Petitioner's consent would have yielded the same result as the motion to suppress.

Reasonable suspicion is also reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("We therefore hold that as a general matter determinations of reasonable suspicion . . . should be reviewed de novo on appeal."); *see United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011) ("While the existence of reasonable suspicion is a factual determination, the ultimate determination of the reasonableness of a search and seizure under the Fourth Amendment is a question of law reviewed de novo."). During the criminal case, the Government offered a substantial amount of evidence—Petitioner's nervous demeanor, his passenger's demeanor, their travel plans, their presence in a drug corridor—to show that reasonable suspicion existed for the continued investigation and questioning.[15] Under the totality

---

[15] The Government had argued that reasonable suspicion existed based on the following facts:

>    (a) Petitioner was acting nervous, and his hands were visibly shaking when he handed his license and registration to Sgt. De La Garza;
>    (b) Petitioner made a point of telling Sgt. De La Garza that he had been pulled over on four occasions in Lordsburg;

of the circumstances, Sgt. De La Garza had reasonable suspicion to continue his investigation and questioning.  Thus, appellate review of reasonable suspicion would have yielded the same result as the motion to suppress.  Accordingly, I find that Petitioner's arguments as to Sgt. De La Garza's continued investigation and questioning would have been meritless on appeal.

Even if the omitted arguments concerning the investigative detention had some merit, Petitioner still has not established constitutionally deficient performance in his appellate counsel's failure to raise the omitted issues.  Appellate counsel had discretion to choose which nonfrivolous arguments to advance on appeal.  *See Welch*, 639 F.3d at 12–13   Here, appellate counsel used her discretion to argue the issue she found most meritorious on appeal.  I find that the omitted issue, evaluated and rejected by Judge Reagan, was not so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003).  Moreover, I find that it was not ineffective assistance for appellate counsel to use her professional judgment to omit this issue and focus on arguments of greater merit.  *See id.*

I find that Petitioner has failed to establish ineffective assistance of appellate counsel for her failure to contest the continued investigation and questioning following the initial traffic stop.

---

(c) Petitioner's travel plans seemed suspicious, as did the time of day that Petitioner was traveling;

(d) When Sgt. De La Garza asked Petitioner the name of his friend that he was visiting in Tucson, Defendant hesitated in responding;

(e) Some of Petitioner's answers seemed internally inconsistent or implausible;

(f) Petitioner's passenger, Ms. Martinez, seemed lethargic, and her eyes were droopy, indicating she was under the influence of methamphetamine;

(g) Ms. Martinez avoided eye contact with Sgt. De La Garza, indicating that she was not telling the truth or had something to hide;

(h) Ms. Martinez was not sure exactly how long they had been in Tucson and gave inconsistent responses;

(i) There were inconsistencies between Ms. Martinez' responses and Petitioner's  responses; and

(j) This particular stretch of Interstate 10 between Lordsburg and Deming is a known drug corridor.

[CV Doc. 77] at 17.

**C.**   **Ineffective Assistance of Appellate Counsel in Failing to Contest the Probable Cause for Seizure of Petitioner's Vehicle**

Petitioner claims that his appellate counsel was constitutionally ineffective in failing to contest the probable cause for Sgt. De La Garza's seizure of Petitioner's vehicle prior to obtaining a search warrant.  [CV Doc. 1-1] at 3.  After speaking with Agent Luke De La Garza at 3:42 a.m., Sgt. De La Garza seized Petitioner's car without a warrant.  [CV Doc. 77] at 10. Police then drove Petitioner and Ms. Martinez to a truck stop.  *Id.*  Petitioner contends that the Government lacked probable cause to believe his vehicle contained evidence of criminal activity, in violation of *Polly*, 630 F.3d at 997.  [CV Doc. 7] at 5–6.  Petitioner further asserts that the drive to the truck stop was an unconstitutional "constructive seizure" of himself and his passenger—for which there was no probable cause.  *Id.* at 6.  Petitioner believes that the Tenth Circuit would have reversed Judge Reagan's denial of the motion to suppress had appellate counsel argued this issue on direct appeal.  *Id.*

In evaluating the suppression motion, Judge Reagan examined probable cause and found no Fourth Amendment violation.  [CR Doc. 77] at 22.  Judge Reagan examined the totality of the circumstances, noting specifically that Petitioner and Ms. Martinez were both extremely nervous throughout the stop, Ms. Martinez avoided eye contact, Petitioner had "unusual travel plans," and Petitioner was allegedly involved in "moving drugs" in Deming.  *Id.* at 21.  Judge Reagan found that, "based on the totality of the circumstances and the logical inferences drawn by Sgt. De La Garza from his experience," probable cause existed to seize Petitioner's car.  *Id.* at 22.

Had appellate counsel raised the issue of probable cause on appeal, the Tenth Circuit would have reviewed the issue de novo.  *Ornelas*, 517 U.S. at 699 ("We therefore hold that as a

general matter determinations of . . . probable cause should be reviewed de novo on appeal."); *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) ("[W]e review a district court's probable-cause determination de novo, . . . ."). To make a probable cause determination, a court examines the totality of the circumstances and determines whether a set of factors could, taken together, add up to a fair probability of criminal activity. *See United States v. Sokolow*, 490 U.S. 1, 9 (1989). Petitioner's and Ms. Martinez's demeanor, the unusual travel plans, and Agent Luke De La Garza's statement that petitioner was allegedly moving drugs in the area add up to a fair probability of criminal activity.[16] The totality of the circumstances supports a finding of probable cause. I find that Petitioner's arguments as to the lack of probable cause would have been meritless on appeal, and thus appellate counsel was not constitutionally ineffective for omitting that issue.

Assuming *arguendo* that the issue was not meritless—which I do not find—Petitioner has failed to establish that his counsel was deficient in failing to raise the omitted issue. As noted above, appellate counsel has discretion to choose which nonfrivolous arguments to raise on appeal. I find that the omitted issue was not so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal. *See Cargle*, 317 F.3d at 1202. And in examining this issue relative to the rest of the appeal, I find that counsel was not constitutionally ineffective in using her professional judgment to omit this issue and instead focus on arguments of greater merit. *See id.*

Therefore, I find that appellate counsel was not constitutionally ineffective in failing to contest probable cause to seize Petitioner's vehicle on direct appeal.

---

[16] It should be noted that findings of fact—such as witness credibility—are reviewed for clear error. Petitioner has offered nothing to show that Judge Reagan's determinations as a factfinder were clearly erroneous.

## CONCLUSIONS AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I recommend that Petitioner's § 2255 motion [CV Doc. 1; CR Doc. 138] be **DENIED**, and that his action be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**